UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUDITH MORAN,**<br><br>        Plaintiff,<br><br>    v.<br><br>**DAVITA, INC. et al.,**<br><br>        Defendants. | Civil Action No. 06-5620 (JAP)<br><br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the Court following supplemental briefing on the parties' motions for summary judgment [Doc. Entry Nos. 21, 22]. As set forth in greater detail in the Court's Opinion [Doc. Entry No. 55] and Order [Doc. Entry No. 56], issued on March 23, 2009, the Court granted summary judgment in favor of Defendants DaVita, Inc. and Javier Rodriguez (collectively, "DaVita") on all counts except for Plaintiff's claim for lost benefits under Count Two of the Complaint, which asserted breach of contract by DaVita. The parties were directed to provide further briefing on the calculation of damages flowing from that breach. Plaintiff submitted supplemental briefing and a reply [Doc. Entry Nos. 64, 66] and DaVita submitted opposition [Doc. Entry No. 65]. The matter was referred to the undersigned by the Honorable Joel A. Pisano, U.S.D.J., for Report and Recommendation pursuant to 28 U.S.C. 636(b)(1)(B). For the reasons set forth below, it is respectfully recommended that Plaintiff be awarded damages for her out-of-pocket COBRA costs and for the unpaid car allowance, in the total amount of $2,746.69. It is further respectfully recommended any further relief sought by Plaintiff, including pre-judgment interest, be denied.

**I.     BACKGROUND**[1]

Plaintiff's relationship with DaVita was governed by an Employment Agreement, which defined the terms, benefits and conditions of her employment relationship with DaVita. [Doc. Entry No. 55 at p. 2; Doc. Entry No. 21-5]. The Employment Agreement expressly allowed for DaVita to terminate Plaintiff's employment with or without cause; in the event of a termination without cause, however, DaVita was required to provide six months written notice. Under the Agreement, DaVita could remove Plaintiff from her duties during that notice period. [Doc. Entry No. 55 at p. 3; Doc. Entry No. 21-5 §14], but Plaintiff's benefits during that period were to remain unaltered. [Doc. Entry No. 55 at pp. 3-4; Doc. Entry No. 21-5 §14].

On or about May 2, 2006, Plaintiff's employment was terminated without cause. She remained in her position until her services were terminated on June 16, 2006. [Doc. Entry No. 55 at pp. 22-25]. DaVita did not provide "unaltered benefits" for the entire six month notice period. Plaintiff's insurance benefits were discontinued as of June 16, 2006, when she ceased performing services for DaVita. [Doc. Entry No. 64-2 ¶5]. Her auto allowance payments, which were made as part of her biweekly payroll, were discontinued at the same time.

Plaintiff seeks to recover damages for benefits programs she was enrolled in at the time of DaVita's breach, as well as for the car allowance. [Doc. Entry No. 64-2]. Additionally, Plaintiff seeks pre-judgement interest on this Court's damage calculation. [Doc. Entry No. 64-2]. Plaintiff's requests will each be discussed in turn below.

---

1. Only those facts necessary for an understanding of this Report and Recommendation are set forth herein; this Court refers to the Opinion on the parties' motions for summary judgment for additional background. [Doc. Entry No. 55].

## II.     ANALYSIS

### A.     Damages for the benefits programs in which Plaintiff was enrolled

The parties disagree as to how damages for Plaintiff's lost benefits should be calculated. Plaintiff contends that she "is entitled to the value of each and every insurance program cost and benefit in which she was enrolled in June 2006, but which DaVita then failed to fund or pay thereby discontinuing [her] coverage . . . ." [Doc. Entry No. 64-2 at p. 10]. Relying on Fariss v. Lynchburg Foundry, 769 F. 2d 958 (4th Cir. 1985), Plaintiff contends that her lost benefits should be valued by the premium that DaVita would have paid but for its breach of the Agreement. [Doc. Entry No. 64-2 a pp. 10-11]. DaVita opposes this valuation method and argues that basic contract principles control enforcement of the Agreement, to insure that the non-breaching party is placed in the position she would have been in had no breach occurred. [Doc. Entry No. 65 at p. 8].

When a contract is breached, the breaching party becomes liable for all natural and probable consequences flowing from the breach of contract. Totaro v. Lane, Middleton & Company, L.L.C., 191 N.J. 1, 13-14 (2007), citing Pickett v. Lloyd's, 131 N.J. 457 (1993).[2] As the New Jersey Supreme Court has recognized, "the goal is 'to put the injured party in as good a position as . . . if performance had been rendered.'" Id. citing Donovan v. Bachstadt, 91 N.J. 434, 453 (1982); Stayfront, Inc. v. Tobin, 570 F. Supp. 2d 603, 608 (D.N.J. 2008). Consequently, Plaintiff should be placed in the position she would have been but for DaVita's breach of the Employment Agreement. At the same time, Plaintiff should not be placed in a

---

2. The Court has already determined that New Jersey law applies to Plaintiff's contract claim. [Doc. Entry No. 55 at pp. 18, 21].

better position.

Contract principles conflict with Plaintiff's proposed method of valuing damages for the loss of benefits — namely, that she should recover the premiums DaVita would have paid for benefit programs in which she was enrolled at the time of breach — because her proposal would place her in a better position than if performance had been rendered. [Doc. Entry No. 64-2 at p. 10]. Plaintiff relies on Fariss v. Lynchburg Foundry, 769 F. 2d 958 (4th Cir. 1985), in support of her analysis. Fariss involved the wrongful discharge of an employee in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621, et seq., ("ADEA"). The court in Fariss considered how to value a life insurance policy that would have covered the employee but for his wrongful discharge. Id. at 961, 965. At the time of the litigation, the former employee was deceased and his estate was seeking recovery of the policy proceeds, rather than the premium payments. Id. at 965. In rejecting the plaintiff's proposal, the Fariss court stated, without citing authority, that "the value of being insured for a given period is precisely the amount of the premiums paid." Id.

Fariss is distinguishable from the present case for a number of reasons. Notably, Plaintiff's claim for lost benefits arises from a breach of contract claim, not from a discrimination or retaliation claim. Even if that were not the case, however, this Court is not convinced that the standard articulated in Fariss would apply. Other courts, including the Fifth and Ninth Circuits, have not valued lost benefits as the amount that would have been paid in premiums, but rather have provided compensation for lost benefits in terms of actual replacement costs or expenses that would have been covered under the benefits policy. Lubke v. City of Arlington, 455 F.3d 489, 499 (5th Cir. 2006) (correct measure for lost benefits damages is the actual cost of

replacement insurance or expenses incurred that would have been covered); EEOC v. Farmer Bros. Co., 31 F.3d 891, (9th Cir. 1994) (proper measure of lost benefits is the amount of actual expense); Merkel v. Scovill, Inc., 570 F. Supp. 141, 145-146 (S.D. Oh. 1983) (expenses incurred for replacement insurance were recoverable, but not premium amounts that would have been paid by employer).

Given that Fariss arises under the ADEA and its method of valuation has not been uniformly accepted, this Court is not inclined to follow it. Therefore, this Court will apply traditional contract principles to determine the value of Plaintiff's lost benefits.

After her benefits were terminated, Plaintiff obtained replacement insurance pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA").[3] [Doc. Entry No. 64-2 at p. 7]. Plaintiff submits that she contributed $82.23/month for COBRA coverage for a period of three months, totaling $246.69. [Doc. Entry No. 64-2 at p. 7]. Plaintiff has not alleged that her COBRA replacement insurance differed in any way from her prior insurance coverage or that she incurred any expenses through the COBRA replacement insurance that would have been covered by her prior insurance coverage. Thus, to place Plaintiff in the same position she would have been but for the breach, she should be reimbursed for the premium she paid for replacement COBRA insurance for three months.

As for the other benefits for which Plaintiff alleges she is entitled to recover — vision insurance, employee life insurance, accidental death and dismemberment coverage, short and long term disability coverage, casualty insurance, and credit union — she has not alleged that she

---

3. Plaintiff's health insurance appears to have included her dental insurance as well. [Doc. Entry No. 65 at p. 7].

5

incurred any costs in securing replacement benefits or that she was forced to pay costs that would have been otherwise covered but for DaVita's breach.  In the context of an employment contract, the Third Circuit has declined to award damages where the plaintiff would not have been able to make a claim under the insurance policy for a covered injury and where the plaintiff did not seek replacement insurance coverage.  McAleer v. McNally Pittsburg Manu. Co., 329 F.2d 273, 278 (3d Cir. 1964) (applying Pennsylvania law).  Awarding Plaintiff the premium amount would essentially place her in a better position than she would have been had there been no breach.  Therefore, this Court recommends that Plaintiff be allowed to recover only those amounts she actually spent to secure COBRA coverage.

      B.      Damages for the car allowance

Pursuant to the Employment Agreement, Plaintiff was entitled to a car allowance of $500/month.  [Doc. Entry No. 21-5 at p. 6, §10].  The record reflects that payment of this allowance was made biweekly, as part of Plaintiff's regular pay, and was discontinued on June 16, 2006 due to her termination.  [Doc. Entry No. 64-4 at p. 4].  Plaintiff now seeks to recover $2500, representing the car allowance she was due for five months and did not receive due to DaVita's breach.

While the parties do not disagree as to the amount of the car allowance, they do disagree as to whether the car allowance should be considered a benefit pursuant to Section 14 of the Agreement.  [Doc. Entry No. 64-2 at p. 12; Doc. Entry No. 65 at pp. 9-10].  Plaintiff contends that it is a fringe benefit and is therefore recoverable.  See [Doc. Entry No. 64-2 at p. 12].  DaVita claims that the car allowance is not a benefit under the Employment Agreement and is therefore not part of the "unaltered benefits" to which Plaintiff was entitled during the notice

period. [Doc. Entry. No. 65 at pp. 9-10].

Section 10 of the Agreement provides that "[Plaintiff] is entitled to a car allowance in accordance with [the Employer's] prevailing regulations. $500 per month." [Doc. Entry No. 21-5 at p. 6]. In Section 12, the Employment Agreement states that "[Plaintiff] shall be eligible to participate in each pension, welfare, and fringe benefit program made available generally to executives of [the Employer] in accordance with the terms and provisions of each such program." [Doc. Entry No. 21-5 at p. 6]. With regard to a termination without cause, Section 14 provides that "[the Employer] is at all times entitled to immediately remove Judith E. Moran from [her] employment duties, but with unaltered benefits for Judith E. Moran during the period of notice." [Doc. Entry No. 21-5 at p. 7].

Plaintiff argues that she is entitled to recover the car allowance that DaVita failed to pay because it was a fringe benefit under the Employment Agreement, and DaVita's failure to pay was in breach of Section 14's requirement that she receive "unaltered benefits" during the notice period. See [Doc. Entry No. 64-2 at p. 12]. DaVita argues, however, that Plaintiff should not recover the unpaid car allowance, contending that the plain language of the Employment Agreement precludes the car allowance from being construed as a benefit. In this regard, DaVita relies upon the fact that the car allowance is in a section entitled "Company Car" and not in the section entitled "Benefits." DaVita claims that the "Benefits" section defines benefits as limited to "each pension, welfare, and fringe benefit program," without mention of the car allowance. [Doc. Entry No. 65 at pp. 9-10]. DaVita then concludes that Section 14, in referring to "unaltered benefits" in the case of termination without cause, is limited to those benefits included in Section 12, "Benefits." Because the car allowance is in Section 10, DaVita argues that it falls

7

outside it obligation to provide "unaltered benefits." [Doc. Entry No. 65 at p. 9].

In New Jersey, a court must enforce a contract as written where the terms are clear. Cumberland County Improvement Auth. V. GSP Recycling Co., Inc., 358 N.J. Super. 484, 496 (App. Div. 2003). Whether a term in a contract is clear or ambiguous is a question of law for the court to decide. Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002); Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 282 (D.N.J. 1992). In determining the meaning of a term, a court must give that term its "plain and ordinary meaning." Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) citing Kaufman, 828 F. Supp. at 283. There are certain terms, however, such as trade terms, legal terms of art or words of common accepted usage that should be interpreted in accordance with their "specialized or accepted usage." Kaufman, 828 F. Supp. at 283 quoting Nevets C.M., Inc. v. Nissho Iwai American Corp., 726 F. Supp. 525, 533 (D.N.J. 1989).

As an initial matter, this Court is not persuaded that Section 12 defines "benefits," as DaVita urges. Not only does Section 12 fail to provide an express definition of what a benefit is under the Employment Agreement, but it also fails to limit, exclude or otherwise restrict a "benefit" to those categories referenced in Section 12. Furthermore, Section 17.9 of the Employment Agreement states that "the headings contained in this Agreement are intended solely for convenience of reference and shall not affect the rights or the parties to this Agreement." [Doc. Entry No. 21-5 at p. 11]. Although a court must analyze specific terms of a contract in conjunction with the meaning of a contract as a whole, Kaufman, 828 F. Supp. at 283 citing Barco Urban Renewal Corp. v. Housing Auth. of Atlantic City, 674 F. 2d 1001, 1009 (3d Cir. 1982), the parties here have specifically stated that such headings are not determinative.

Therefore, the fact that the car allowance appears in a separate section under the heading "Company Car," rather than under the heading "Benefits," does not mean that the car allowance is not a benefit for purposes of Section 14.

The Court additionally notes that the portion of Section 14 dealing with terminations without cause uses the term "benefit," but does not qualify that term in any way or reference Section 12. [Doc. Entry No. 21-5 at pp. 6-8]. Instead, that portion of Section 14 addresses DaVita's obligations in the event of a termination without cause, in the context of benefits, vacation entitlements, and bonus. The car allowance is not separately referenced further supporting the conclusion that the car allowance was intended to be encompassed within the requirement of "unaltered benefits."

Even if DaVita were correct that the obligation to provide "unaltered benefits" is limited by the "Benefits" Section, the Court would still have to consider whether the car allowance is included in "fringe benefits," as set forth in Section 12. As defined by Black's Law Dictionary, a "fringe benefit" is "a benefit (other than direct salary or compensation) received by an employee from and employer such as insurance, a company car or a tuition allowance." Black's Law Dictionary (8th ed. 2004). The Court also notes that federal tax law, which addresses the taxation of fringe benefits, states that an employer-provided automobile is an example of a fringe benefit. 26 C.F.R. Sec. 1.61-21(a)(1). Thus, the plain and ordinary meaning of the term fringe benefit encompasses an employee's entitlement to a car allowance. Accordingly, this Court concludes that Plaintiff is entitled to the unpaid car allowance, which Plaintiff asserts is valued at $500.00 per month, for a period of five months. [Doc. Entry No. 64-2 at p. 12]. As such, it is respectfully recommended that Plaintiff be awarded damages in the amount of $2,500.00.

  C. <u>Pre-judgment Interest</u>

 Finally, Plaintiff seeks pre-judgment interest on her damages arising from DaVita's breach of contract. [Doc. Entry No. 64-2 at p. 14]. DaVita opposes Plaintiff's request, noting that a pre-judgment interest award on a contract claim is discretionary and should not be awarded here because Plaintiff's loss was nominal and interest would therefore constitute a windfall. [Doc. Entry No. 65 at pp. 9-10].

 The purpose of a pre-judgment interest award is to indemnify the non-breaching party for the loss of monies that would have been earned but for the delay in payment. <u>Cooper Distributing Co., Inc., v. Amana Refrigeration, Inc.</u>, 63 F.3d 262, 284 (3d Cir. 1995). In New Jersey, "the award of pre-judgment interest for claims arising in contract is subject to the discretion of the trial court." <u>Cooper Distributing</u>, <u>supra</u>, 63 F.3d at 284, citing <u>Meshinsky v. Nichols Yacht Sales, Inc.</u>, 110 N.J. 464, 541 (1988). The Third Circuit has noted that "a district court may exercise [its] discretion [to award pre-judgment interest] upon considerations of fairness and pre-judgment interest may be denied when its exaction would be inequitable." <u>Hunts Point Co-op Market, Inc. v. Madison Financial LLC</u>, No. 08-2133, 2009 WL 2700169, at *9 (3d Cir. August 28, 2009) (internal quotations omitted).

 The Court notes that Plaintiff herself recognizes the difficulty in calculating interest, were it to be awarded, in light of the fact that the COBRA and car allowance payments were to be made over a period of time, rather than all at once. In addition, while Plaintiff suggests that any award of interest should be calculated in accordance with New Jersey Court Rule 4:42-11, Rule 4:42-11 governs post-judgment interest and interest in tort actions, rather than pre-judgment interest in contract actions. The rates referenced by Plaintiff in her supplemental submission

[Doc. Entry No. 64-2 at pp. 14-15] apply to actions in which the judgment amount exceeds the Special Civil monetary limit of $15,000.  See N.J. Court Rule 4:42-11(a)(ii) and (iii).  That is not the case here.  Furthermore, Plaintiff does not contend that the rates set out in any way relate to what she would have earned on the monies at issue, had she had them to invest throughout this period.

As a result, this Court concludes that Plaintiff has neither established a basis for an award of pre-judgment interest nor has she provided a cogent basis on which such interest should be calculated.  Accordingly, it is respectfully recommended that Plaintiff's request for pre-judgment interest be denied.

### III.  CONCLUSION

For the reasons set forth above, it is respectfully recommended that Plaintiff be awarded damages for her actual expenses in obtaining COBRA coverage for three months, at $82.23/month, for a total of $246.69, as well as for the unpaid car allowance, which is $500/month for five months or $2,500.00, for a total award of $2,746.69.  It is further respectfully recommended that Plaintiff's request for pre-judgment interest be denied.

The parties have 14 days from the date hereof to file objections.

                                                       Respectfully submitted,

Dated: January 15, 2010

                                                       /s/ Lois H. Goodman
                                                       **LOIS H. GOODMAN**
                                                       **United States Magistrate Judge**